Jeffrey T. Hall, Esq.
Attorney at Law
1700 Pacific Avenue, Suite 4750
Dallas, Texas 75214
(214) 635-1839

Attorney for Plaintiffs
MARY FROSTO, SHANE SUTTON,
DEREK LEONARD, DAVID REX,
CYNTHIA PULLEN, JAVIER
VILLARREAL, SUHENDRA UTET,
JENG THITIKARN and MARTHA SAPIEN

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In Re: JAMES VARGA, III,** | § § § § | |
| **Debtor.** | § § | |
| **MARY FROSTO, SHANE SUTTON, DEREK LEONARD, DAVID REX, CYNTHIA PULLEN, JAVIER VILLARREAL, SUHENDRA UTET, JENG THITIKARN, AND MARTHA SAPIEN,** | § § § § § § § § § | **Bankruptcy No. 21-41656-ELM-7** <br><br> **Adversary No. _____** |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **JAMES VARGA, III,** | § § | |
| **Defendant.** | § | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs MARY FROSTO, SHANE SUTTON, DEREK

1

LEONARD, DAVID REX, CYNTHIA PULLEN, JAVIER VILLARREAL, SUHENDRA UTET, JENG THITIKARN and MARTHA SAPIEN, complaining of JAMES VARGA, III, and for causes of action would show unto the Court the following:

*Parties*

1. Creditor and Plaintiff MARY FROSTO is a natural person and a resident of Denton County, Texas.

2. Creditor and Plaintiff SHANE SUTTON is a natural person and a resident of Dallas County, Texas.

3. Creditor and Plaintiff DEREK LEONARD is a natural person and a resident of Collin County, Texas.

4. Creditor and Plaintiff DAVID REX is a natural person and a resident of Tarrant County, Texas.

5. Creditor and Plaintiff CYNTHIA PULLEN is a natural person and a resident of Dallas County, Texas.

6. Creditor and Plaintiff JAVIER VILLARREAL is a natural person and a resident of Denton County, Texas.

7. Creditor and Plaintiff SUHENDRA UTET is a natural person and a resident of Denton County, Texas.

8. Creditor and Plaintiff JENG THITIKARN is a natural person and a resident of Dallas County, Texas.

9. Creditor and Plaintiff MARTHA SAPIEN is a natural person and a resident of Denton County, Texas.

10. Debtor and Defendant JAMES VARGA, III, aka JIMMY VARGA

2

("Varga") is a natural person. He may be served with process at 4215 Southcrest Drive, Arlington, Texas 76013-5513, or wherever else he may be found.

11. KATHERINE VILLARREAL is a natural person. She may be served with process at the following addresses or wherever she may be found: 605 Parker Drive, Euless, Texas 76039 or 4101 W. Green Oaks Drive, Suite 235, Arlington, Texas 76106, or wherever else he may be found.

12. PARTNERS WITH BENEFITS PROPERTY GROUP, LLC ("PWB") is a business entity, that may or may not be currently extant. It may be served with process by serving its registered agent for service of process, Jimmy Varga, 4215 Southcrest Drive, Arlington, Texas 76013-5513, or wherever else he may be found.

13. WE'RE HOME REAL ESTATE HOLDINGS, LLC ("WHR") is a business entity, that may or may not be currently extant. It may be served with process by serving its registered agent for service of process, Jimmy Varga, 4215 Southcrest Drive, Arlington, Texas 76013-5513, or wherever else he may be found.

14. Upon information and belief, Varga used or is using corporate entities and assumed names, including (but not limited to) PWB and WHR to defraud Plaintiffs of Plaintiffs' money and other assets and rights in excess of $400,000.00, through making false statements regarding Creditors' and Debtor's respective duties, obligations and contractual rights. Adherence to the fiction of the separate existence of PWB, WHR and other related entities as separate and distinct from Varga would permit an abuse of the corporate privilege and would sanction fraud and injustice if same were to shield Varga from the consequences of his wrongful conduct.

15. The true identities and capacities of all of the corporate shell game parties are unknown to Creditors at this time. Accordingly, Creditors are informed and believe, and

on that basis allege, that such shell game entities are in some manner responsible for some or all of the acts and omissions alleged herein. Creditors will seek leave to amend this Complaint to state the true identity and capacity of such shell game parties when such facts become known to Creditors.

16. Not all of the Creditors / Plaintiffs were listed or named on the schedules filed by Varga related to the Bankruptcy Petition.

*Jurisdiction*

17. Creditors bring this action pursuant to 11 USC §§ 523(a)(2)(A), 523(a)(2)(b), 523(a)(4) and 523(a)(6). Creditors seek judgment, inter alia, determining Varga's debts to Creditors to be non-dischargeable under 11 USC §§ 523(a)(2)(A), 523(a)(2)(b), 523(a)(4) and 523(a)(6).

18. This Court has jurisdiction over this adversary proceeding pursuant to (i) 28 USC § 1334, as a civil proceeding arising under the United States Bankruptcy Code ("Bankruptcy Code") or arising in a case commenced under the Bankruptcy Code; and (ii) 28 USC § 157 as a civil proceeding which constitutes a core proceeding.

19. Venue lies in the Northern District of Texas.

*Factual Background*

20. In 2018, Defendant Jimmy Varga formed Partners with Benefits Property Group, LLC ("PWB"). The purpose of this entity ostensibly was to solicit clients for joint ventures and other vehicles in which to invest for the purchase and development of real property.

21. Again in 2018, Katherine Villarreal joined PWB, as its Marketing Director and Seminar presenter.

22. Defendant Varga and Katherine Villarreal began soliciting investors

through dinners and seminars at which one or both would make presentations to potential investors.

23. In one solicitation, Katherine Villarreal caused an advertisement to issue, which stated, inter alia: "Do you have 'lazy money'? If you aren't earning double-digit returns, then it's time to wake your money up!"

24. This and other events around this time were sponsored by Partners with Benefits Property Group, LLC, an entity owned and controlled by Defendant Varga.

25. In the referenced solicitation, Villarreal implied that she was an investment and financial professional, which she was not.

26. Expensive dinners were used by Defendant Varga and Katherine Villarreal to solicit investors. Defendant Varga and his cohorts falsely told potential investors that the investment schemes offered by Defendant offered substantial income with little or no risk. Individuals could participate in a joint venture, fund a gap loan, or fund a line of credit that would generate a large return on investment. Defendant Varga and his cohorts represented that the financial vehicles were used to develop real properties under construction or development. In truth and in fact, little or no construction was done, and the properties allegedly developed were nothing more than cheap undeveloped lots. Defendant Varga diverted the monies invested to his own use and benefit.

27. By the end of 2018, investors were beginning to demand an accounting, to no avail.

28. In early 2019, PWB began defaulting on joint ventures and gap loans with the individual investors.

29. In January 2019, Katherine Villarreal acknowledged to Plaintiff Mary

5

Frosto that PWB was behind by five months on paying her for one of the properties (on which Frosto held the first deed of trust) but that PWB would pay her soon because PWB was bringing on a million-dollar investor.

30. This investor, Susan Graham, was to be yet another victim who lost all of her million-dollar plus investment. This investment represented her entire life savings.

31. From time to time, Katherine Villarreal spoke with Plaintiffs, lulling them into a false sense of security that all was well with PWB, Varga and WHR.

32. In July 2019, all construction stopped.

33. PWB and Varga had borrowed $16 million from hard-money lenders, Capstone and Loan Ranger. In August 2019, PWB stopped payments on those loans.

34. Intending to further his scheme to defraud, and avoid liabilities that were piling up with PWB, Defendant Varga formed WHR. Varga transferred at least one property and group of investors to WHR.

35. WHR then borrowed $140,000 from Lone Ranger for construction purposes.

36. In September 2019, PWB employees began quitting because Defendant Varga ceased paying them.

37. In October 2019, Defendant Varga raised $70,000 from three investors for a property, known as the Magnolia property.

38. In December 2019, Defendant Villarreal initiated two conference calls with Plaintiffs. Katherine Villarreal stated that unless $500,000 was raised in twenty-four hours, PWB would have to close and everyone would lose their investments.

39. Katherine Villarreal then in January 2020 informed Plaintiffs that

Defendant Varga had found the money needed through an equity buyer in New York.

40. By February 2020, several of the investment properties were scheduled for foreclosure, due to Defendant Varga's failure to pay his various loans.

41. In an attempt to forestall foreclosure, Defendant filed frivolous lawsuits against the hard money lenders. These suits were dismissed.

42. In March 2020, with the properties again scheduled for foreclosure, and in fact on the last day before foreclosure, Defendant Varga filed for bankruptcy protection for PWB and WHR.

43. In that same month, both bankruptcy petitions were dismissed because Defendant Varga failed and refused to supply appropriate schedules and documentation.

44. In April 2020, attorney Daena Ramsey, representing PWB, offered Plaintiffs a cash payment of sixty percent of their investments, contingent upon a release of all claims, liens, or other obligations. This offer was good only for forty-eight hours, the terms were not negotiable, and this was a one-time offer.

45. At other times in 2020, Ramsey told some of the Plaintiffs that Varga had secured payment of $20 million from a new investor, and the investor wired funds in that amount, but the investor's bank would not process the wired funds due to the large amount. Later on, Ramsey told some of the Plaintiffs that, due to the Covid-19 outbreak, the investor had backed out.

46. Defendant Varga closed his office and was believed to be working at home. He refused to speak with any of the Plaintiffs, said he would not do so without a non-disclosure agreement and has not delivered an accounting to any of the Plaintiffs.

47. **Mary Frosto**: Frosto invested $104,290 with Varga. She has not received an accounting or any return on her investment or her investment back.

48. **Shane Sutton**: Sutton invested $80,000 with Varga in 2018. He invested $30,000 of the $80,000 in a joint venture agreement with Varga through PWB. He participated in the Villarreal conference calls. After the calls, Sutton investigated and found that he was not on the deed to the property, as promised, and further discovered that PWB had not performed on its obligations to him. He has never received an accounting, or any portion of his investment back.

49. **Derek Leonard**: Leonard invested $60,000 with Varga in 2018. He participated in the December 29, 2019 Villarreal conference calls. After the calls, Leonard investigated and found that he was not on the deed to the properties, as promised, and further discovered that PWB had not performed on its obligations to him. He has never received an accounting, any return on his investment or any portion of his investment back.

50. **David Rex**: At the time of his investment, $51,700, in June 2019, foundation work on the project in which he invested had begun. The next month, July 2019, all construction work ceased. By office messages, texts and emails, Rex demanded answers from Varga as to the status of development of his investment. Varga refused to respond to any requests for information. Rex participated in the December 2019 Villarreal conference calls. After the calls, Rex discovered that his investment property was scheduled for foreclosure because Varga had not paid the hard-money lender and the lender was now in first position on the deed. He has never received an accounting, any return on his investment or any portion of his investment back.

51. **Cynthia Pullen**: Pullen invested $35,500 with PWB. She has not received an accounting or any return on her investment or her investment back.

52. **Javier Villarreal**: Villarreal (no relation to Katherine Villarreal) invested $30,000 with PWB. After the conference calls with Katherine Villarreal, Plaintiff Javier

Villarreal discovered that he was not listed on the deed on his investment property, as promised. He has not received an accounting, any return on his investment or his investment back.

53. **Suhendra Utet**: Utet invested $25,000 with PWB. He was also a participant in the December 2019 conference calls. In January 2020, Utet began investigating, emailing, and texting Varga for information. In that same month, Utet sent Varga a certified letter, demanding an opportunity to examine the books. Varga never responded. Utet visited the PWB office, which was closed. Katherine Villarreal then placed a lulling phone call to Utet, claiming that Varga was busy closing the office and raising further capital. On January 12, 2020, Utet received a lulling letter stating that Varga was working on more options to raise capital. Utet's investigation revealed that the property in which he had been invested had been transferred from PWB to WHR. The property had been sold, without Utet's knowledge to another person on August 30, 2019. At the time of the lulling letter and phone call, Defendant Varga and Villarreal well knew the property was no longer an investment vehicle for Plaintiff Utet and had been sold, with none of the proceeds going to Utet. He has not received an accounting, any return on his investment or his investment back.

54. **Jeng Thitikarn**: Ms. Thitikarn invested $10,000 with PWB. She has not received an accounting, any return on her investment or her investment back.

55. **Martha Sapien**: Ms. Sapien invested $10,000 with PWB. She also participated in the December 2019 conference calls. After the calls, she discovered that her name was not on the deed of the investment property, as promised. She has not received an accounting, any return on her investment or her investment back.

56. In all, Defendant Varga and Villarreal received $406,490.00 from the

9

Plaintiffs, which they converted to their own use and benefit. As of June 2, 2020, all of Varga's properties were sold at a foreclosure sale.

### *First Claim for Relief*

57. Plaintiffs reincorporate the above paragraphs in this request for relief.

58. Defendant Jimmy Varga and Katherine Villarreal, in combination with each other, conspired to defraud Plaintiffs of their investment funds.

59. Defendant knew that the agreed-upon acts would result in harm to the Plaintiffs.

60. To accomplish the object of their agreement, Defendant performed one or more of the following overt acts:

    a. Advertising and representing that they had investment, financial and real estate knowledge, experience, and expertise that they did not in fact have.

    b. Promising the Plaintiffs that they would receive a substantial return on their investments.

    c. Soliciting and receiving funds from the Plaintiffs that Defendant did not intend to use as promised, in the investment and development of real properties.

    d. Converting said funds to their own use and benefit.

    e. Obtaining funds from lenders, using the Plaintiffs' investment properties as collateral.

    f. Failing to pay taxes on the investment properties.

    g. Causing mechanics and materialmens liens to be placed on the properties.

    h. Failing to pay the amounts due to the hard-money lenders, causing the properties to go into foreclosure.

    i. Filing frivolous lawsuits against the lenders, attempting to forestall

foreclosure.

j. Filing frivolous and incomplete bankruptcy petitions, in a further attempt to stay foreclosure.

k. Closing the PWB office so that Plaintiffs could not visit Defendant personally.

l. Causing a conference call with Plaintiffs falsely representing that PWB was insolvent and that Plaintiffs would be required to invest an additional $500,000, on pain of losing their original investments.

m. Sending lulling communications, including, but not limited to, emails, text messages, letters, and phone calls, designed to lull Plaintiffs into a false sense of security concerning their investments and prevent calls for refunds, legal action or other relief.

n. Refusing an accounting to all Plaintiffs, refusing to communicate with Plaintiffs regarding the status of their investments or properties and refusing to allow Plaintiffs to examine the books of PWB.

o. Further encumbering the investment properties by pledging them to other investors and failing to disclose these acts to Plaintiffs.

p. Failing and refusing to place the Plaintiffs' names on the deeds of the investment properties.

q. Failing and refusing to place the Plaintiffs' names on the deeds of the investment properties as first lien holders.

r. Failing and refusing to protect the Plaintiff's interest in the investment properties from claims by other persons or entities, including, but not limited to liens and foreclosure.

  s. Selling the investment properties to persons other than the Plaintiffs who had invested in the properties.

  t. Failing and refusing to provide Plaintiffs with any return on their investments.

  u. Failing and refusing to return the investment funds to Plaintiffs.

  61. Defendant' agreement to perform these underlying and overt acts proximately caused injury to Plaintiffs, depriving them of the following: Benefit of the bargain; Out of pocket damages; Lost profits; No return on investment; and, Loss of their original investment amounts.

  62. Plaintiffs therefore seek unliquidated damages in an amount within the jurisdictional limits of this Court.

  63. Plaintiffs' injuries resulted from Defendant' gross negligence, malice, and/or actual fraud, entitling them to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003 (a).

### *Second Claim for Relief*

  64. Plaintiffs reincorporate the above paragraphs in this request for relief.

  65. Regarding Defendant's organization(s), Defendant represented to Plaintiffs that:

  a. They had investment, financial and real estate knowledge that they did not in fact have.

  b. That Plaintiffs would receive a substantial return on their investments.

  c. That Defendant would use the invested funds for the stated investment purposes and goals.

66. Defendant's representations to Plaintiffs were material because they induced Plaintiffs to invest funds with Defendant Varga and PWB and/or WHR.

67. Defendant's representations constituted false statements of fact as Defendant and his entities did not intend to perform on their agreements with Plaintiffs, as more fully described above in Paragraph 60 (a)-(u) and that Defendant intended to convert the investment funds to his own use and benefit.

68. Defendant representations also constituted false promises of future performance, as more fully described above in Paragraph 60 (a)-(u).

69. Defendant's conduct, as more fully described above in Paragraph 60 (a)-(u), amounted to false representations, omissions and fraud toward Plaintiffs.

70. Defendant made the false representations and omissions to Plaintiffs knowing they were false.

71. Defendant intended for Plaintiffs to rely on the false representations and expected that Plaintiffs would rely on these false representations.

72. Plaintiffs justifiably relied on Defendant's false representations by investing with Defendant and PWB.

73. Defendant's false representations directly and proximately caused the following injuries to Plaintiffs: Benefit of the bargain; Out of pocket damages; Lost profits; No return on investment; and, Loss of their original investment amounts.

74. Plaintiffs therefore seek unliquidated damages in an amount within the jurisdictional limits of this Court.

75. Plaintiffs' injuries resulted from Defendant' gross negligence, malice, and/or actual fraud, entitling them to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003 (a).

### *Third Claim for Relief*

76. Plaintiffs reincorporate the above paragraphs in this request for relief.

77. Defendant failed to disclose and concealed from Plaintiffs with respect to the investment offerings and subsequent investments by Plaintiffs material facts, to wit:

   a. That Defendant did not intend to perform their obligations under the investments.

   b. That Defendant intended to convert the investment funds to his own use and benefit.

78. Defendant had a fiduciary duty to disclose the information to Plaintiffs because he and his organization sold real estate interests to Plaintiffs.

79. Defendant had a duty to disclose the information to Plaintiffs because Defendant partially disclosed some of the information to Plaintiffs, which created a substantially false impression.

80. Defendant had a duty to disclose the information because Defendant voluntarily disclosed some of the information to Plaintiffs.

81. The information was material because, had Plaintiffs known of this information, they would not have invested monies with Defendant and PWB and/or WHR.

82. Defendant knew Plaintiffs were ignorant of the information and did not have an equal opportunity to discover the truth.

83. Defendant deliberately remained silent and did not disclose the information to Plaintiffs.

84. By deliberately remaining silent, Defendant intended for Plaintiffs to act without the information.

85. Plaintiffs justifiably relied upon Defendant' deliberate silence.

86. Defendant' deliberate silence directly and proximately caused injury to Plaintiffs, to wit: Benefit of the bargain; Out of pocket damages; Lost profits; No return on investment; and, Loss of their original investment amounts.

87. Plaintiffs therefore seek unliquidated damages in an amount within the jurisdictional limits of this Court.

88. Plaintiffs' injuries resulted from Defendant' gross negligence, malice, and/or actual fraud, entitling them to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003 (a).

### *Fourth Claim for Relief*

89. Plaintiffs reincorporate the above paragraphs in this request for relief.

90. Plaintiffs and Defendant were parties to transactions involving interests in real estate.

91. During the transaction, Defendant made false representations of material facts to Plaintiffs, to wit:

    a. They had investment, financial and real estate knowledge that they did not in fact have.

    b. That Plaintiffs would receive a substantial return on their investments.

    c. That Defendant would use the invested funds for the stated investment purposes and goals.

92. Defendant made the false representations to Plaintiffs for the purposes of inducing Plaintiffs to invest in the real properties and sign joint venture agreements, gap loan documents and other agreements.

93. Plaintiffs justifiably relied on the Defendant's false representations by investing in the real properties, signing the joint venture agreements, gap loan documents and other agreements.

94. Defendant' false representations directly and proximately caused Plaintiffs injuries and damages, to wit: Benefit of the bargain; Out of pocket damages; Lost profits; No return on investment; and, Loss of their original investment amounts.

95. Plaintiffs therefore seek unliquidated damages in an amount within the jurisdictional limits of this Court.

96. Plaintiffs' injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, entitling them to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003 (a).

97. Plaintiffs are entitled to recover reasonable and necessary attorneys' fees, expert witness fees, court costs and costs for copies of depositions under Tex. Bus. & Comm. Code § 27.01 (e).

### *Fifth Claim for Relief*

98. Plaintiffs reincorporate the above paragraphs in this request for relief.

99. Plaintiffs owned the following personal property, to wit: current money of the United States of America.

100. Defendant wrongfully acquired and exercised dominion and control over the property.

101. In the alternative, even if Defendant legally acquired possession of Plaintiffs' personal property, he wrongfully exercised dominion and control over the property by using it in a way that deviated from the conditions under which it was received.

102. Defendant refused to return the money on Plaintiffs' demand.

103. Defendant's acts amounted to a clear repudiation of Plaintiffs' rights.

104. In the alternative, a demand for the return of the property would have been useless.

105. Defendant' wrongful acts directly and proximately caused injury to Plaintiffs, which resulted in the following damages: Loss of use of the money; Loss of profits from the money invested.

106. Plaintiffs therefore seek unliquidated damages in an amount within the jurisdictional limits of this Court.

107. Plaintiffs' injuries resulted from Defendant' gross negligence, malice, and/or actual fraud, entitling them to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003 (a).

### *Sixth Claim for Relief*

108. Plaintiffs reincorporate the above paragraphs in this request for relief.

109. Defendant or entities under the control of Defendant hold money that, in equity and good conscience, belongs to Plaintiffs, to wit: their investment monies. Defendant wrongfully converted and appropriated these funds as more fully described above.

110. Therefore, Plaintiffs seek liquidated damages of at least $406,490.00.

111. Plaintiffs' injuries resulted from Defendant' gross negligence, malice, and/or actual fraud, entitling them to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003 (a).

### *Jury Demand*

112. Plaintiffs demand a jury trial.

**Prayer for Relief**

For these reasons, Plaintiffs pray that Defendant be cited to appear and answer, and that on final trial of this case, Defendant's debts to Plaintiffs be determined non-dischargeable, and that Plaintiffs be awarded: Actual damages; Prejudgment and postjudgment interest; Costs of court; Exemplary damages; Statutory damages; and All other relief to which Plaintiffs are entitled.

Dated:  November 22, 2021

Respectfully submitted:

By: /s/ Jeffrey T. Hall
    Jeffrey T. Hall
    State Bar No. 00787622

1700 Pacific Avenue, Suite 4750
Dallas, Texas 75201
Telephone (214) 635-1839
Facsimile (855) 830-1952
Email jthallesq@gmail.com

**ATTORNEY FOR PLAINTIFFS MARY FROSTO, SHANE SUTTON, DEREK LEONARD, DAVID REX, CYNTHIA PULLEN, JAVIER VILLARREAL, SUHENDRA UTET, JENG THITIKARN AND MARTHA SAPIEN**